[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By her second amended petition, the petitioner seeks a writ of habeas corpus. For reasons hereinafter stated, the petition is dismissed.
The evidence indicates that on September 30, 1992, the petitioner entered a plea of guilty to the crime of murder in violation of Connecticut General Statutes § 53a-54a. On July 27, 1993, the petitioner was allowed to withdraw her plea and enter a new plea of guilty to the same charge resulting in her conviction. After such conviction on January 21, 1994, the court imposed the minimum sentence of 25 years. At the time of trial, petitioner was confined to the custody of the Commissioner of Correction pursuant to the sentence imposed.
By her second amended petition filed November 15, 1999, petitioner seeks a writ of habeas corpus claiming that her present confinement is in violation of the law. Petitioner has set forth her claims in three counts. Counts One and Three allege ineffective assistance of counsel by her initial attorney, Michael Peck, and her second attorney, Alan McWhirter. The second count alleges that a plea of guilty entered by the petitioner on September 30, 1992, was invalid because the canvass was inadequate and did not substantially comply with the requirements of Practice Book § 39-27(1) and (4).
 I.
Since Counts One and Three involve claims of ineffective assistance of counsel, these counts will be considered together.
With respect to the first and third counts, "[t]he standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth inStrickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his CT Page 16256 counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . . Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 445-46, 610 A.2d 592 (1992)." Mercerv. Commissioner of Correction, 51 Conn. App. 638, 640-41 (1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
At the time of her arraignment on the murder charge, petitioner was represented by the Public Defender's Office for the Judicial District of Waterbury. Shortly thereafter, Attorney Michael A. Peck entered his appearance and commenced representing the petitioner. Mr. Peck had been retained by petitioner's husband. There was evidence that in retaining the services of Mr. Peck, the husband was not motivated by the highest of principles and was interested in obtaining an attorney who would resolve the issues in the most expedient manner without getting into the details. On the recommendation of Mr. Peck, on September 30, 1992, petitioner entered a plea of guilty to the murder charge. The plea was accepted by the court and a date of sentencing was set. Attorney Alan D. McWhirter, public defender for the Judicial District of Waterbury, had observed Mr. Peck's representation of the petitioner and was appalled by his observations. He noted that during the probable cause hearing, Mr. Peck was totally inattentive. Mr. McWhirter was also concerned by the short period of time between the arrest and the entry of the guilty plea by petitioner. He had also received information to the effect that petitioner did not understand what she was doing at the time the plea was entered. Subsequently, it was learned that Mr. Peck was the subject of criminal prosecution in the federal district court at about the same time he was handling petitioner's case and that CT Page 16257 this resulted in his being sentenced to a term of federal imprisonment.
Because of his concern about Peck's representation of the petitioner, Attorney McWhirter let it be known to the petitioner that his office was ready to represent her if she so desired. Shortly thereafter, Mr. McWhirter entered his appearance for the petitioner in lieu of Attorney Peck. Mr. McWhirter did not immediately move to withdraw the guilty plea. There was an understanding with the judge, however, that the matter would not proceed to sentencing and that he would have adequate time to prepare petitioner's defense. In this connection, it is noted that ten months elapsed between the plea of September 30, 1992, and the withdrawal of the plea on July 27, 1993.
Without going into further detail, it must be concluded that the allegations of ineffective assistance of counsel contained in the first count with respect to Mr. Peck have been proven. There is strong evidence which leads to the conclusion that Mr. Peck's representation of the petitioner fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law. It cannot be concluded, however, that petitioner suffered any actual prejudice or that Mr. Peck's lack of competence contributed significantly to the petitioner's conviction so as to have deprived her of a fair trial. There is nothing to indicate that but for Attorney Peck's unprofessional conduct the result would have been different.
No sentence was imposed as a result of the September 30, 1992 plea and new counsel came into the case to represent petitioner. No pressure was put on new counsel to resolve the case and ample time was allowed for him to represent the interests of petitioner. It cannot be found that petitioner suffered any substantial prejudice as a result of Mr. Peck's inefficient representation.
After Peck's dismissal, Attorney McWhirter took over the petitioner's defense. The question then is whether or not Mr. McWhirter's representation of petitioner was ineffective as alleged in the third count of the complaint.
Before considering Mr. McWhirter' s representation of petitioner, it is necessary to examine the facts surrounding the offense for which petitioner has been convicted. Most of these CT Page 16258 facts were not in dispute while the case was pending.
Petitioner had befriended the victim of the homicide, Barbara Rivera, and allowed her to live in petitioner's home with her family. Unknown to petitioner, her husband commenced an affair with Ms. Rivera. When petitioner subsequently learned of this affair, she was greatly agitated.
The presentence investigation describes petitioner as an unsophisticated woman possessing very little education, skills or employment history. She speaks no English and her world seems to have gravitated around her children, her church and her husband of 23 years. Her husband, who appears to have been the Iago[1]
in this matter, was described as an abusive, domineering individual. There was evidence that the husband orchestrated the confrontation between petitioner and Ms. Rivera and that he pointed out to petitioner where she could find his loaded pistol.
It is undisputed that on March 9, 1992, petitioner took her husband's pistol and drove to Ms. Rivera's residence. She went to the door and asked for Ms. Rivera. Ms. Rivera went outside with the petitioner and a confrontation occurred. There was some evidence that Ms. Rivera went back into their house and was called out a second time by petitioner. The evidence is clear that at a confrontation outside of the house, petitioner used her husband's pistol to shoot Ms. Rivera eight times. Subsequently, Ms. Rivera died of the wounds inflicted. The petitioner did not seek assistance for the victim but fled the scene in her automobile. An eyewitness identified petitioner as the shooter and her vehicle was also identified.
Petitioner was apprehended by the police and, after an advisement of rights, admitted shooting Ms. Rivera. In the transcript of the September 30, 1992 court proceedings, the state's attorney stated that in confessing that she shot the victim, petitioner stated that she did it because of the wrong that she had suffered and because of the alleged relationship between the victim and petitioner's husband.
In representing petitioner, Attorney McWhirter was presented with a situation where there was conclusive evidence that petitioner caused the death of Ms. Rivera by gunshot together with considerable circumstantial evidence from which a jury could conclude that the killing was intentional. There was little, if any, evidence which could be used to support a claim of self CT Page 16259 defense under General Statutes § 53a-19 before a jury.
The only viable defenses available to petitioner were those based upon her mental condition. At Attorney McWhirter's request, a competency examination under the provisions of General Statutes § 54-56d was performed. As a result of this examination, it was determined that petitioner was competent.
Attorney Peck had caused petitioner's mental condition to be reviewed by a psychologist. After reviewing the psychologist's report turned over to him by Peck, Attorney McWhirter caused petitioner to be further examined by a Spanish-speaking psychiatrist. A review of these two reports caused Attorney McWhirter to conclude that presenting affirmative defenses based upon a lack of capacity due to mental disease or defect under the provisions of General Statutes § 53a-13 or extreme emotional disturbance under the provisions of § 53a-54a would be futile.
All attempts by Attorney McWhirter to have the state's attorney reduce the charge to manslaughter were unavailing. The state's attorney was prepared to proceed to trial only on the charge of murder.
The defense in petitioner's case was presented with a situation where if they proceeded to trial on the charge of murder, in all probability petitioner would be convicted of that offense with exposure to a life sentence. On a plea of guilty to murder, petitioner could be assured of the minimum mandatory sentence of 25 years.
Attorney McWhirter explained the situation to petitioner, with the aid of a Spanish interpreter, making certain that she understood the entire situation and the ramifications of her plea. Being fully apprised of the situation, petitioner agreed to, and did, enter a plea of guilty and received the minimum sentence of 25 years.[2]
From the evidence, it must be concluded that petitioner has failed to prove the allegations of the third count. It cannot be found that Attorney McWhirter's representation of petitioner was in any way deficient. He zealously represented petitioner's interests and at no time did his performance fall below the required standards of competency required by attorneys engaged in the defense of criminal cases. Under the difficult circumstances facing the defense in this case, his tactical decision to CT Page 16260 recommend a plea of guilty cannot be found to be unsound. Petitioner was fully advised of the situation and she accepted the recommendation.
 II.
In the second count of the complaint, petitioner contends that the plea canvass made by Judge Kulawiz on September 30, 1992, did not substantially comply with the Practice Book provision, § 39-27 (1) and (4). Specifically, it is claimed that Judge Kulawiz did not address each right and privilege that was being waived by petitioner's plea of guilty and that the court did not inform the petitioner that she waived her right to trial and that she was also waiving her right to present any defenses which she might have and the right to cross examine witnesses.
With respect to the second count, "[i]t is well established that a guilty plea which is not made voluntarily and intelligently constitutes a violation of a defendant's federal constitutional rights and a judgment of conviction based on such a plea cannot stand." Dukes v. Warden, 161 Conn. 337, 338 (1971), affd. 406 U.S. 250, rehearing denied 407 U.S. 934. By entering a plea of guilty, an accused person is admitting guilt of a substantive crime. That is why such a defendant must be instructed in open court on the nature of the charge to which the plea is offered and why the plea cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. U.S. v. Broce, 488 U.S. 563, 568 (1989). Connecticut Practice Book § 39-19 (§ 711 at the time of plea) sets forth the procedure which the judge must follow before a plea of guilty may be accepted.
A review of the transcript of the court proceedings on September 30, 1992, at which petitioner entered her plea of guilty, requires a conclusion that Judge Kulawiz' s canvass was in substantial compliance with the Practice Book and the underlying law. However, it is noted that the plea of guilty entered on September 30, 1992 was later withdrawn on July 27, 1993, and there is no claim that the canvass made on that date was in any way defective. There is no evidence that petitioner suffered any prejudice as a result of the plea entered on September 30, 1992.
 III. CT Page 16261
From the evidence, it must be concluded that petitioner has failed to prove the allegations of her complaint. Judgment may therefore enter dismissing the claim for a writ of habeas corpus.
Joseph J. Purtill Judge Trial Referee